Good morning. May it please the court, my name is Patrick Gregory, and I'm actually not counsel for petitioner. I'm amicus pro bono counsel for petitioner myself, along with Amir Nassihi and Mia Hernandez. There are basically several grounds for reversing and remanding this case, the first of which is that the suspension of deportation was improperly pretermitted. There was a finding by the immigration judge in Alloy in 1998 that petitioner had not been served. He was then served on the record. He was actually served by the INS attorney. Pardon me, counsel. I think the language of the IJ was that for purposes of the issues that were to be brought up at the hearing, he asked and he made sure that there was proper service in court. But he didn't make a finding that the 1994 notice had not been statutorily given. Is that correct? I'm not sure if that – I don't know if I agree with that or not. Why don't you agree with that? You know, part of it is all I can do is read the cold transcript. I can't go into his mind and know exactly what he meant by that. But I do know in a case, you basically only get served once. And he asked the petitioner, have you ever received notice of the charges? And he said, no. And he said, OK, well, we need to serve you. And he asked the immigration attorney present, can we do that? And she could have said, well, actually, he's already been served in this case. And that may have been a good thing for her to say because the law was well-established at that point about there's a seven-year continuous presence rule. And if the immigration attorney would surely know the effect of service being established in 1998. He said, since you did not receive advance notice of the charge against you, I must reset the case. It's the law. Then he served him again. Could you move the mic closer to you? Oh, yes. Anyway, that's a matter of our reading the transcript. I don't want to take too much of your time. But while we're on that issue, let me ask, was this question brought up before the BIA? You know, I believe it was. I could find it in the record, but I might fumble around a while for that to happen. I thought Petitioner, or counsel's Petitioner, in briefing before it went to the IJ in San Francisco mentioned that. And then when it went to the BIA, I thought he had mentioned that in his brief. But the bottom line is the record will reflect that one way or the other. I also think there's a second independent ground on the service issue here. And that's that the only claimed service by the government in this case is that Petitioner's wife was served. And there's language in the Chaydez case where this court indicated that we've read the service statute. It looks like even with service by a certified male, service has to be given to the alien. There's also language in Chaydez where this court noted that the origin of the responsible person service requirement is unknown. They just noted, the court just noted that it's something that the Board of Immigration Appeals had previously come up with. And if you read the plain language of the service statute, it indicates that the OSC has to be given to the alien. The phrase responsible person appears nowhere within the service statute. And I believe it's a matter of just plain statutory construction that this court's initial analysis in Chaydez that it has to be given to the alien was correct. Now, as we noted in our briefing, what the court did was recognizing that there were several cases that followed the Board Grijalva opinion. And this court went ahead and made the responsible person analysis anyway. But at the outset of its opinion, that this court said that there really isn't such a requirement in the statute. Moving on to a second ground for reversal, the board erred in pretermitting the CAT claim on the basis of a fingerprinting requirement. As the entire Board of Immigration Appeals recognized, there is no fingerprinting requirement in CAT. And the fact of the matter is, before the hearing, petitioner was fingerprinted anyway. So he basically complied with a non-existent requirement as to CAT. So we believe that the CAT claim was improperly pre-terminated on the basis of the fingerprinting requirement that didn't exist. The next ground for reversal is that the board erred on the merits in the petitioner's asylum and withholding claims. Petitioner testified at length, despite his alleged lack of fingerprinting, there was basically a merits hearing held. He testified at length about his past persecution. The IJ found him to be credible. The government at that point had to rebut the law's presumption that he had a well-founded fear of future persecution. There was no individualized evidence presented by the government. The only thing they presented was a generalized state report. And there's case law from the circuit that indicates that generalized state reports are insufficient. Finally, the board offered as a second reason for the IJ's refusal to provide a fingerprint to the alien. I think the court's CUI case is directly on point in this analysis, and I think it's difficult for the government to get, or the respondent to get around CUI, but anyway, there was no fingerprint. Didn't the alien have about two years to get his fingerprints? I mean, CUI was, they didn't give him any time. The alien in this case? Yes, he did, but at the end of the day, he got it done. He does not speak Spanish. It's unclear to me that he ever really understood what he was supposed to do. The respondent suggests that we ought to apply the 2005- Ortega doesn't speak Spanish? I'm sorry, if that's what I said, that's wrong. Yeah. He doesn't, he speaks Spanish, as I understand it from the record, from the transcript at his immigration hearing, he doesn't speak English. We've had several cases where we have just remanded for the agency to consider the effect of CUI in this case, so is that what you think we should do, or do you think we should find that he didn't need to comply? I think you should find that he didn't need to comply. To the extent there was a requirement back then, he did comply. As CUI notes, it was quite common back in 2003 that immigration judges would hold hearings, merits hearings, and if they found that the alien, you know, had a meritorious case, then afterwards they'd say, well, you need to get fingerprinted so we can, you know, make sure you are who you say you are. In this case, this was actually done before the hearing, and there was no dispute on the record that he was who he said he was. His claim of political asylum is based on the fact that he's a member of the Pan Party and the Priests roughed him up before he came to this country. There have been two elections in a row where the Pan Party has won the national election. They've been in power since the year 2000 when Vicente Fox went in. Haven't conditions in Mexico changed so that members of the Pan Party can live in peace? That's a generalized statement applicable to the entire country, and the law requires an individual showing which wasn't made in this case. In this province, the Priests still beat people up with bicycle chains. I don't know that one way or the other. The whole point is that that should have been examined at the hearing. There was no finding made as to whether he was persecuted or not persecuted. Is that right? I think that's right if you say there's no explicit words from the IJ in 2003 that say, I find that you were subject to past persecution. But his testimony entirely consisted of the past persecution that he had, including, you know, his family's hut was burned down. He was beat with chains. And the IJ's response was, I find you to be credible in this matter. So I think it's strongly implicit in her credibility finding. We're not allowed to ourselves make that determination if it wasn't pretty explicitly made. So we would often send it back, I think, for an explicit finding. But we can look at the record to see exactly what the IJ said. Okay. I think I'm out of time, so if there's no other questions. You are, but we'll give you a minute for rebuttal if there's something that needs to be said. Thank you very much. We'll now hear from the representative, the Attorney General. Good morning, Your Honors. May it please the Court. My name is Isla Dice, Assistant U.S. Attorney for the Respondent. Eric Holder. Before we get started, we got this notice this morning that the case might be settled. What can you tell us about that? I can tell you that we haven't had any formal discussions. It appears that Petitioner might be eligible for a benefit that has not been discussed at all yet. It's not asylum. It's not suspension of deportation or cancellation of removal. It's something called repapering, which is a possibility for him to apply for. Can you explain what that means? This is, to the extent that I understand it, this is we are dealing with an area of law that's changed quite a bit since 1996, when IHRA IHRA was passed. This petitioner came in pre-IHRA IHRA in 1990 and was properly served with an order to show cause in 1994 that put him into suspension of deportation proceedings. Part of what's come up in this case is whether he was properly served, and we can discuss that a little bit more later. But the repapering, it's my understanding that they would allow, because the law is in 1996, there were people like Petitioner that were in a sort of a limbo stage. It was unclear whether he should be in deportation proceedings or removal proceedings. And so there's a provision, there aren't regulations for it, but there's a provision that allows the agency to essentially re-serve him, take away the order to show cause and serve him with what is now called a notice to appear, put him in removal proceedings, and if he is prima facie eligible for something called cancellation of removal, he could apply for that. But not suspension of deportation. Suspension of deportation is passed long gone. So to apply for cancellation of removal, he'd have to show that the extreme 10 years. It would be 10 years, continuous presence, good moral character, and extreme and unusual hardship to a qualifying relative. To show prima facie eligibility, he would just need to show that he has a qualifying relative, and it's my understanding. Does he have a qualifying relative? It's my understanding that he does. Minor child? Yes. Would your suggestion be, I think we go ahead in your argument, obviously, but that we then perhaps defer submission until you work this out? That would be fine for the government. Is there any known timeline for how long this repapering proposal might be, might take before we find out whether it bears root? What I want to make clear is that as a government attorney, I can't apply for the petitioner, so I would be relying on the Petitioner's Council, and there are issues with that as well. Taking on, actually getting the ball moving, it would need to go back to the BIA to issue an order, I think because there's a final administrative order of removal, they would need to reopen the case and look at whether repapering is appropriate here, and they have done that. But I think it could be done, and this is just me talking off the top of my head, 30, 60 days. We don't want to lose track of a case, so if we do decide to defer submission, we'll be asking counsel to give us a status report at some reasonable time. If you know it's going to take longer, I don't want to set a time where a report's going to be futile, but at some point in time, we'll need to keep track. So if you think 60 days might be reasonable, then we'll keep that in mind when we issue our order. Very good. Do you want me to jump in, too? As you know, there's two issues here, two benefits that are being looked at. One is the suspension of deportation issue, which the court is looking at for abuse of discretion. It's a motion to remand that was filed with the BIA. And the second is the application, or it's actually the second application for, the denial of the second application for asylum withholding of removal and relief under the CAT, which is looked at for substantial evidence and whether the record compels a contrary finding. And there were two, there were alternate findings here by the immigration judge, one being even if Petitioner had timely filed, which he did not timely filed his fingerprints, the I.J. went on to, and Judge Fletcher, I will go into specifically what the I.J. found. The I.J. went on to find that the conditions in Mexico had changed, and as Judge Beyer pointed out, the party that he is a member of is now the ruling party, and therefore could not establish either future persecution or that it would. Kennedy. Counsel, Mr. Gregory pointed out that there was no particularized finding as to the, I guess, the area of Mexico where this gentleman lives and where he said he would be at jeopardy. Could you address that point? Where did he live? He lived in Zacatecas, which is in central Mexico. And if you go through the hearing transcripts, the I.J. took extensive testimony both from him and his wife and heard about his ejido. He was, his family worked land in the Zacatecas area. I think Amea or Ameca is the little town that he was a member of. He heard, the I.J. also heard from the Petitioner's wife. I'd like you to address what the present conditions in Zacatecas is. The present conditions, and before I go into that, I just want to make clear that anything that's been submitted as part of the amicus brief, which is dated 2009, has not been provided to the agency. So that would need to be, there would be, the agency would need to have an opportunity to look at that information. As Judge Bea, you pointed out, Calderon is a pan, the president is panista. And he is still in power. Recently, however, there is a majority of Congress by maybe 5% in power. That is, the PRI group is in power, has a majority of Congress. But the ruling party is still, the president is still, and he's got three more years, I think. So. What about the governor in Zacatecas? He is pan, panista as well. Could you speak to how the I.J. spoke to this? I mean, one of the things that's hard about this case is that under current conditions, which we're generally aware of, the claim being asserted at this time may not, does not reflect the conditions felt by Petitioner at the time that he fled Mexico. But 20 years have passed, and a lot of things are different now. And so it's hard to take on some level seriously the claim that somebody who happened to have been a pan supporter at that time is going to face such persecution as to justify his admission to this country as a refugee. But we do have requirements in our case law with regard to individualized analysis. And as I look through the immigration judge's decision, I have trouble finding where he did that as opposed to, gee, everybody knows Pan's in power now, so there can't be any problem anymore. Knowing that Pan may hold the presidency and has for the last two, does that really tell us enough to sustain this decision under our case law? And if so, why? Thank you. Judge Coachman, I digressed. And what I wanted to make clear is that the review here is substantial record evidence. And if you look through the transcription of the hearing, the judge took all of this evidence in, very particularized evidence. And then it is true in her, Judge Tito's a woman, in her decision, it's sort of a cursory review. There isn't a specific finding to past persecution. She talks about the fingerprinting issue and then says even if I were to find that the fingerprinting issue was not here, the government has presented sufficient evidence to show that country conditions have changed, specifically the party that you say that you were a member of and that you were persecuted by this other party, your party is now in power. The oral decision is somewhat generalized that way. You can make the, she made the jump all the way from finding past persecution, the rebuttable presumption of future persecution, got all the way there and said there's just no showing of future persecution. And again, she mentioned the specific party and the area and the current conditions, and I'm not sure how much more particularized she could be. And if you look at the hearing as a whole, it's the government's position that she did make a specific enough of a determination. As to the way time has passed, you're absolutely right. And the appropriate way to bring that up to the BIA and to the agency would be to file a motion to reopen. And there's no temporal or numerical limitations on a motion to reopen for change country conditions and provide the evidence that the amicus brief has provided, allow the government to make the determination of whether removal or deportation proceedings should be reopened and asylum application should be considered. We could do a Ventura remand for the BIA to consider current conditions. Is that right? That's correct. I would cite to you, yes, that the BIA needs to make that determination in the first instance under Ventura, not this Court. Yeah, I guess the best way to characterize the IJ's decision was kind of messy. So we don't know really whether she made an actual finding that there was or was not past persecution. You kind of assume she finds past persecution because she goes on to look at country conditions, so it would seem that maybe a remand to clean this up would be appropriate. Again, as I stated earlier, I think that the record of evidence looked at as a whole is sufficient to, to, it does not compel a contrary decision to the, to the, to the agency's decision. But I'm not sure what the decision was. It's that, again, even if you, even if you found, yes, I find, because she did find him credible, even if I found past persecution and you had the rebuttable presumption of future persecution and we make it all the way to that stage, now we're looking at the way conditions are in Mexico and they're not, they don't rise to the level of, of persecution or that there would be a likelihood of torture if you were to be returned to Mexico. Before I know my time is up, I just want to address. We're keeping you there. Judge Fletcher, you brought up, I pronounce it Cui, I'm not sure, and the Cui remand as far as the fingerprinting issue, and I just want to make it clear that this is very important. The Petitioner had a translator there the whole time. On the record, the judge says to his attorney, please make sure your client has fingerprints, and I have the sites for that. I have it right here before me, but in our cases, there's been somehow statements that they ought to let the individual know the consequences. There's nothing here about the consequences. It just says make sure your client gets those fingerprints. She does, she does rely on the attorney. I just also want to refer the court to page 163, which is a document that was served on Petitioner by his, by the translator. So it's presumed that it was translated into Spanish for him, and on that document, there's a clear stamp that says you must provide your fingerprints by a date certain, which is. But it doesn't tell him what the consequences are. It doesn't tell him what the consequences are. No, I read that piece of paper, and it doesn't tell him what the consequences are. And then just one last thing is that, and also different than Cui, there's no request for continuance that wasn't requested here. I think the IJ was making the, she opens up saying, I see that you should have provided fingerprints. Why didn't you provide fingerprints, giving him a chance to show reasonable cause why he failed to do so. And he just said that my attorney didn't make it clear to me. And then she went on to hear the entire, she didn't stop proceedings. She didn't deny a continuance. She went on to take all the evidence. He didn't have the fingerprints at that time? He had provided them four days beforehand, and it's unclear from the record. Was there a need for a continuance? I mean, they were there. He wouldn't need more time. Now, it may be if the IJ decided the agency needed more time, she could have granted a continuance. But I'm not sure why we should expect the Petitioner at that point. Since he'd done what he was supposed to do, albeit late. Right. I'm not sure that he should be expected to ask for a continuance or that that's a meaningful distinction. The distinction I was trying to make, Judge Klimt, was that CUI is all about whether the judge should have provided a continuance. And I just want to make clear that it was not requested here. And it's not clear by the record whether the results had come in or not. Presumably, they did. Do you have any other questions? We've taken you over time. I'm sure the government will reward you richly for the additional minutes. But we have nothing further, so we thank you for the argument. Thank you. And invite Mr. Gregory to return to the podium. Thank you. I was asked earlier about whether Petitioner argued to the Board of Appeals that there was service in June of 98. And I thought there was, and I couldn't remember at the time, but it's page 16. Well, my real question isn't about whether he contested the question of service. It's this law of the case doctrine. It seems to me peculiar in this context, but if it's supposed to be raised, the place it should be raised is in front of the BIA. So I wasn't clear in my question. My real question is whether this law of the case argument was made to the BIA. Fair enough. It was not. But I believe what Petitioner was arguing was that there was a finding of service on the record, and it was ignored by the IJ in San Francisco, and then it was ignored by the Board of Appeals. I mean, they never ---- No service. What's that? You don't mean a finding of service. Can you keep correct of me on my misstatements? Thank you. Yes, there was a ---- Well, take half your fee, as the President pointed out. Well, you know what half my fee is. I know. Exactly. Yes. There was a finding of service, and the way Petitioner approached it to the Board was the IJ in San Francisco never went back and looked at what happened in 1998 and the IJ should have, and what we did when we got the case, and perhaps we were being, you know, too clever about it. But I was just trying to figure out the label. No, I mean, I understand the logic of the argument, but I take a step back and say, and there's a potential debate with regard to whether law of the case should apply to administrative agencies, but it seems to me if someone is going to decide that in the first instance, it has to be the BIA. And if this particular argument wasn't made to the BIA, I'm not sure how we can approach it and say that, well, by law of the case, the agency should pay attention and be bound to what the first IJ says. If its supervisor, the BIA, doesn't speak to it and isn't asked to speak to it, are we really in a position to say to the agency how it has to conduct its affairs? I guess what I'm saying is I look at law of the case as a label for the argument. The argument was made on page 16 of the administrative record. He didn't use, Petitioner's counsel didn't use law of the case. The raw material was in front of the BIA as it is in front of us. I mean, we know what kind of service was accomplished by certified mail, and I understand the argument that has been made with regard to whether that was effective, but we don't really need the first IJ who didn't really seem to make a definitive ruling. The BIA didn't need what the first IJ said to decide for itself whether it thought service had been effective, because it had in front of it the facts as we do. I mean, you've made the argument as to whether or not the certified mail was effective, and that's really what we're talking about. So I come back to the doctrine of law of the case, and I'm puzzled as to how it is we're supposed to be able to say that must apply to this agency when the agency itself hasn't had an opportunity, the agency in the form of the BIA hasn't had an opportunity. The BIA's regulations and their handling has required them to look to the law of the case. So the whole thing is kind of messy. The office of chief immigration judge said the subsequent IJs not free to disregard orders of the prior IJ, and whether you call it law of the case or just, you know, the simple fact they should have considered prior orders, I think there was an error there after the transfer in 98 in not doing that. And if I could mention one other thing, it's in our briefing, but, you know, there was also a hearing in 95 where the judge, rather than deporting Petitioner, just administratively closed the case, and there's no tapes to be found in the record about what exactly happened at that 95 hearing. I think it was mentioned in Petitioner's brief, and it's something we didn't directly address, but we did mention that we thought there was legal consequences of the fact that there was just administrative closure in 95, but looking at Petitioner's briefing, I think there's also the issue that, you know, we can't even go back to that 95 hearing and hear exactly what was said. And I see I'm way out of time, so I will end it there. Thank you very much. We thank you. We thank both counsel for their helpful arguments. We will defer submission and issue an order. I want to specifically, on behalf of the court, thank pro bono counsel for taking on the responsibility. We appreciate that, as we appreciate those who devote their careers to public service. These services are invaluable, and we much appreciate them.
judges: Fletcher B. , Clifton, Bea